IN THE MATTER OF: JAMES LOUIS FINNICAN, A JUVENILE, ROBERTA PALUMBO, PETITIONER v. JAMES JOHN GARNEY, RESPONDENT, AND GREGORY J. FINNICAN, INTERVENOR

No. 9026DC1074

(Filed 1 October 1991)

**1. Adoption or Placement for Adoption § 49 (NCI4th) — challenge to adoption — no standing by adoptive parent**

An adoptive parent had no standing to challenge the legitimacy of the child's adoption.

**Am Jur 2d, Adoption §§ 72, 74.**

**2. Process § 9.1 (NCI3d) — nonresident individual — insufficient contacts with N. C.**

A father who resided in New York had insufficient contacts with North Carolina to justify the court's exercise of personal jurisdiction over him in an action to terminate his parental rights where his only contact with this state was that his child was brought here by his former wife to whom he paid no support. Accordingly, the judgment terminating the father's parental rights was void and should have been set aside pursuant to the father's motion under N.C.G.S. § 1A-1, Rule 60(b)(4).

**Am Jur 2d, Adoption § 51; Process §§ 186, 191.**

**3. Infants § 9 (NCI3d) — termination of parental rights — action to set aside order — guardian ad litem for child**

The trial court did not err in appointing a guardian ad litem to represent a child in an action to set aside an order terminating the natural father's parental rights where the natural father's suit to set aside the termination order was being financed by the adoptive father who instigated the order.

**Am Jur 2d, Adoption § 51; Parent and Child § 7.**

**4. Rules of Civil Procedure § 11 (NCI3d) — termination of parental rights — father's motion to set aside order — improper purpose — basis in law and fact — sanctions precluded**

Although the natural father may have sought to set aside an order terminating his parental rights for an improper purpose, his motions to set aside the order and for summary

judgment had a sufficient basis in both fact and law to preclude the imposition of Rule 11 sanctions against him where the court that entered the termination order did not have personal jurisdiction over him.

**Am Jur 2d, Adoption §§ 72, 74.**

5. **Rules of Civil Procedure § 11 (NCI3d) — termination of parental rights — adoptive father's motion to set aside — absence of basis in law — improper purpose — sanctions**

Rule 11 sanctions were properly entered against an adoptive father for his Rule 60(b) and summary judgment motions seeking to set aside an order terminating the parental rights of the natural father where N.C.G.S. § 48-28 barred the adoptive father from attacking the validity of the termination order as a means of voiding his adoption of the child, and his motions were made for the improper purpose of escaping his obligations as the child's adoptive father after he and the child's mother were divorced.

**Am Jur 2d, Adoption §§ 72, 74.**

APPEAL by respondent and intervenor from orders entered 7 October 1987 and 29 June 1988 in MECKLENBURG County District Court by *Judge T. Patrick Matus* and from orders entered 24 April 1990 in MECKLENBURG County District Court by *Judge William G. Jones*. Heard in the Court of Appeals 9 May 1991.

*Winifred R. Ervin, Jr., for respondent-appellant.*

*Tucker, Hicks, Hodge & Cranford, by Edward P. Hausle, for intervenor-appellant.*

*Jean B. Lawson for petitioner-appellee.*

*Donald S. Gillespie, Jr., as guardian ad litem.*

WYNN, Judge.

This appeal addresses the validity of a 1979 order terminating the parental rights of James Garney ("Mr. Garney") to Jimmy Finnican (formerly Garney, hereinafter referred to as "Jimmy") as a result of an action brought by Roberta Palumbo ("Ms. Palumbo"). Gregory Finnican ("Mr. Finnican"), the intervenor, is the adoptive father of Jimmy.

IN RE FINNICAN

[104 N.C. App. 157 (1991)]

Ms. Palumbo and Mr. Garney were married on 19 August 1972. Their child Jimmy was born on 5 April 1973. The parties later separated and obtained a divorce in New York on 21 November 1975. The New York court subsequently ordered Mr. Garney to pay $50.00 per week in child support through the Suffolk County Probation Department. Mr. Garney never paid the child support as ordered.

In February 1977, Ms. Palumbo took Jimmy to North Carolina without informing Mr. Garney. From February 1977 until the termination of parental rights proceeding of February 1979, Mr. Garney resided in Suffolk County, New York. However, he moved frequently, worked with different people under different names, and apparently refused to give Ms. Palumbo his address or phone number.

Ms. Palumbo and Mr. Finnican married in Charlotte, North Carolina on 12 February 1977. Thereafter, Mr. Finnican sent his wife to an attorney to terminate Mr. Garney's parental rights, so that he could adopt Jimmy. The same attorney represented Mr. Finnican in securing a decree of adoption.

In December 1983, the couple separated and later obtained a divorce in North Carolina. After problems arose concerning custody and visitation, Mr. Finnican contacted Mr. Garney and introduced Jimmy to his biological father during a June 1986 visit to New York. Mr. Finnican then gave Mr. Garney the name of Mr. Ervin, the attorney who has represented Mr. Garney throughout these proceedings. The record discloses that Mr. Finnican paid for Mr. Garney's attorney's fees for this action, and that Mr. Garney appeared as a witness for Mr. Finnican in his custody case against Ms. Palumbo in which the court awarded custody of Jimmy to Ms. Palumbo. The record further discloses that Mr. Finnican assisted Mr. Garney in moving to Charlotte, North Carolina in July 1989, by locating a home for him a few houses removed from Ms. Palumbo's residence.

Mr. Garney first sought to void the 1979 termination of parental rights by filing a motion to set aside the judgment pursuant to N.C.R. Civ. P. 60(b)(4) and (b)(6) on 13 June 1986; Ms. Palumbo opposed this and subsequent motions. Shortly thereafter, the court appointed Donald S. Gillespie, Jr., as guardian *ad litem* for Jimmy. On 5 May 1987, the court allowed Mr. Finnican to intervene. Both Mr. Finnican and Mr. Garney made motions for summary judgment, which were denied. After hearing the merits of the case, District

Court Judge William G. Jones entered an order on 24 April 1990 denying the motions to set aside the termination of parental rights. On 2 May 1990, *nunc pro tunc* to 24 April 1990, Judge Jones entered an order imposing Rule 11 sanctions against respondent and intervenor, jointly and severally. Mr. Garney and Mr. Finnican appeal from the orders denying their Rule 60(b) and summary judgment motions, appointing a guardian *ad litem* for the minor child Jimmy, and imposing sanctions against them.

I.

In their first assignment of error, Mr. Garney and Mr. Finnican contend that the trial court erred in denying their motions for summary judgment. They assert that the 1979 termination of parental rights is void because the court that entered the order lacked *in personam* jurisdiction over Mr. Garney.

[1]   Before addressing the merits of Mr. Garney's and Mr. Finnican's contentions on this issue, we first note that Mr. Finnican, as an adoptive parent, is without standing to challenge the legitimacy of Jimmy's adoption. To allow him to do so would make a complete mockery of the judicial process wherein he petitioned for and obtained the adoption decree. We will address this point later in this opinion concerning the matter of sanctions, but suffice it to say that Mr. Garney is the proper party who may contest the lack of personal jurisdiction. As such, we only will address the denial of the summary judgment motion on the part of Mr. Garney.

Because Mr. Garney seeks to overturn a previous judgment, we must consider whether relief is available under Rule 60(b). A motion for relief pursuant to N.C.R. Civ. P. 60 is addressed to the sound discretion of the trial judge and on appeal our review is limited to determining whether the trial judge abused that discretion. *Greenhill v. Crabtree*, 45 N.C. App. 49, 262 S.E.2d 315, *aff'd*, 301 N.C. 520, 271 S.E.2d 908 (1980). Rule 60, in pertinent part, provides:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . . .
>
> (4)  The judgment is void;
>
> . . . .

(6) Any other reason justifying relief from the operation of the judgment.

The motion shall be made within a reasonable time . . . .

N.C.R. Civ. P. 60(b)(4) & (6).

Although section (b) of this rule states that all motions shall be made "within a reasonable time," this requirement is not enforceable with respect to motions made pursuant to subsection (b)(4), "because a void judgment is a legal nullity which may be attacked at any time." *Allred v. Tucci*, 85 N.C. App. 138, 141, 354 S.E.2d 291, 294, *disc. rev. denied*, 320 N.C. 166, 358 S.E.2d 47 (1987). A judgment or order is void if, among other things, the court lacked personal jurisdiction. *See Hayes v. Evergo Telephone Co.*, 100 N.C. App. 474, 480, 397 S.E.2d 325, 329 (1990) ("A judgment entered against a defendant over which the Court does not have in personam jurisdiction is void and subject to being set aside pursuant to G.S. 1A-1, Rule 60(b)(4).").

The North Carolina Supreme Court has ruled that when deciding whether *in personam* jurisdiction exists, the courts of this state should employ a two-step analysis. "First, it should be ascertained whether the statutes of this State allow our courts to entertain the action the plaintiff has brought against the defendant." *Miller v. Kite*, 313 N.C. 474, 476, 329 S.E.2d 663, 665 (1985). If so, then the court must determine whether applying the statute would violate the due process clause of the fourteenth amendment. *Id.* at 476-77, 329 S.E.2d at 665.

*In re Trueman*, 99 N.C. App. 579, 393 S.E.2d 569 (1990), illustrates the analysis that is to be undertaken when personal jurisdiction is at issue. In *Trueman*, petitioner and respondent were married in Wisconsin and resided there until they separated. Petitioner, the mother, took their child to Jackson County, North Carolina, where the Jackson County District Court awarded petitioner custody of the minor child and an absolute divorce. About three years later, petitioner initiated an action to terminate respondent's parental rights on the ground that he failed to make support payments ordered by a Wisconsin court for a year preceding the filing of the petition.

This court held that the statutory authority to exert jurisdiction existed because an action concerning the parent-child relationship is *in rem*. *Id.* at 581, 393 S.E.2d at 570. However, we

overturned the termination of parental rights because the father's only contact with this state was the presence of his child and his support payments sent here by the Wisconsin court. The *Trueman* court concluded that the "other requirement, that the person sued has had enough minimum contacts with the state to satisfy due process standards if required to defend the action here," was not satisfied. *Id. Accord Miller v. Kite*, 313 N.C. 474, 329 S.E.2d 663 (1985).

[2]   We are faced with a jurisdictional issue in the case at bar similar to that resolved in *Trueman*. Although there was a statutory basis for exercising personal jurisdiction under N.C.G.S. § 1-75.3(c) (1983), Mr. Garney had virtually no contact with the State of North Carolina. His only contact with the state, according to the record, was that his child was brought here by his former wife to whom he paid no support. Accordingly, we must hold that respondent did not have sufficient contacts with this state to support the exercise of jurisdiction over his person. As such, we find that the 1979 judgment was void for lack of jurisdiction over the person of Mr. Garney.

We conclude that since the facts regarding Mr. Garney's contacts with North Carolina were not in dispute, Mr. Garney was entitled to relief as a matter of law. The trial judge, therefore, erred in refusing to grant Mr. Garney's motion for summary judgment based on Rule 60(b)(4).

II.

[3]   The appellants, Mr. Garney and Mr. Finnican, also assign error to the court's appointment of a guardian *ad litem* to represent the interests of Jimmy. Under N.C.G.S. § 1A-1, Rule 17(b)(3), "a guardian ad litem for an infant or incompetent person may be appointed in any case when it is deemed by the court in which the action is pending expedient to have the infant . . . so represented." This court, in *In re Barnes*, 97 N.C. App. 325, 327, 388 S.E.2d 237, 238 (1990), determined that "N.C.G.S. § 1A-1, Rule 17(c) mandates that a guardian ad litem must always be appointed for a minor child in a termination proceeding regardless of whether a respondent filed an answer denying material allegations of the petition."

The instant case involved an adoptive father financing a suit by the biological father to overturn a termination of parental rights instigated by the same adoptive father. The trial judge properly

determined that it was both expedient and necessary that Jimmy have present a representative concerned only with his best interests. Appellants' assignment of error on this point is overruled.

## III.

Appellants next contend that the trial court committed reversible error in imposing sanctions under N.C.G.S. § 1A, Rule 11. Rule 11 provides,

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

N.C.R. Civ. P. 11. As our Supreme Court stated in *Turner v. Duke University*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989), a trial court's decision to impose sanctions under Rule 11(a) is reviewable *de novo* as a legal issue. When conducting its review, the appellate court must uphold the trial court's determination if it finds the presence of the following: "(1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency of the evidence." *Id.*

In the case at bar, the trial court, on its own initiative, imposed sanctions against intervenor and respondent pursuant to Rule 11. The court, in its conclusions of law, found that said parties pursued their motions to set aside the termination of parental rights order for improper purposes, to harass Ms. Palumbo and Jimmy, and conducted themselves in a way calculated to harm the juvenile. This court has held on a number of occasions that "to impose sanctions against a party for filing a complaint for an improper purpose, the complaint must fail either the Rule 11 legal or factual certification requirements." *Higgins v. Patton*, 102 N.C. App. 301, 306, 401 S.E.2d 854, 857 (1991).

[4] After carefully reviewing the facts of this case, we find that although Mr. Garney may have instigated these proceedings for

an improper purpose and may have behaved reprehensively, his motions had a sufficient basis in both fact and in law to preclude the imposition of sanctions. We, therefore, reverse the trial court on this point.

[5] With respect to Mr. Finnican, however, we uphold the trial court's imposition of sanctions. Under N.C.G.S. § 48-28(a),

> (a) After the final order of adoption is signed, no party to an adoption proceeding nor anyone claiming under such a party may later question the validity of the adoption proceeding by reason of any defect or irregularity therein, jurisdictional or otherwise, but shall be fully bound thereby, save for such appeal as may be allowed by law. No adoption may be questioned by reason of any procedural or other defect by anyone not injured by such defect, nor may any adoption proceeding be attacked either directly or collaterally by any person other than a biological parent or guardian of the person of the child.

N.C.G.S. § 48-28(a) (1984). See *Andrews v. Andrews*, 79 N.C. App. 228, 338 S.E.2d 809, *disc. rev. denied*, 316 N.C. 730, 345 S.E.2d 385 (1986).

Although Mr. Finnican was properly allowed to intervene under N.C.R. Civ. P. 24 because the action involved his putative parental rights and interests, N.C.G.S. § 48-28 barred him, as a matter of law, from attacking the validity of the 1979 termination of parental rights as a means of voiding his adoption of Jimmy. In short, the relief sought by Mr. Finnican in his summary judgment and Rule 60(b) motions was not warranted by existing law. Moreover, as the trial judge correctly determined, he pursued this action for an improper purpose. Mr. Finnican orchestrated Mr. Garney's challenge to the 1979 termination, using Mr. Garney and the courts of this state as a tool in his plan to escape his obligations as Jimmy's adoptive father. Accordingly, we affirm the trial court and overrule Mr. Finnican's assignment of error on this point.

## IV.

Because we hold that the 1979 termination of parental rights order was void, we need not address Mr. Garney's or Mr. Finnican's remaining assignments of error.

In summary, the order denying Mr. Garney's motion for summary judgment is reversed; the order imposing sanctions on Mr.

Garney is reversed; the order appointing the guardian ad litem is affirmed; and the order imposing sanctions on Mr. Finnican is affirmed.

Affirmed in part and reversed in part.

Judges COZORT and ORR concur.