599 S.E.2d 101 (2004)
In re J.W.J., T.L.J., D.M.J.
No. COA03-1188.
Court of Appeals of North Carolina.
August 3, 2004.
Deane, Williams and Deane, by Jason T. Deane, Rockingham, for petitioner-appellee.
M. Victoria Jayne, Hickory, for respondent-appellant.
McGEE, Judge.
The Richmond County Department of Social Services (petitioner) filed petitions on 24 August 2000 alleging that J.W.J., T.L.J., and D.M.J. (collectively, the children) were abused and neglected by their paternal grandparents, who were the children's caretakers. Petitioner assumed immediate physical custody of the children on 24 August 2000. The trial court stated in an order entered 8 January 2001 that the paternal "grandparents/caretakers/[r]espondents and the Department of Social Services [had] reached a settlement and compromise of the issues involving neglect and abuse between them," which the trial court found to be "fair and adequate to protect the interests of the minor children." The grandparents/caretakers/respondents relinquished their custodial rights to the children that had been previously granted to them by the trial court on 13 May 1996, and the allegations of abuse and neglect as to the respondents were dismissed with prejudice. The children's natural father stipulated the children were presently dependent juveniles as defined in N.C. Gen.Stat. § 7B-101(9), in that the minor children were in need of assistance and placement because they had no parent, guardian or custodian able to provide for their proper care and supervision because of their special needs at that time. The trial court held it was "contrary to the welfare of the minor children" that their legal custody be returned to their parents or grandparents and the trial court awarded temporary legal custody of the children to petitioner. The legal custody of the *102 children was ordered to remain with petitioner "with full placement and medical authority" in an order dated 19 September 2001. In orders dated 11 January 2002 and 22 February 2002, legal and physical custody of the children was ordered to remain with petitioner.
Petitioner filed petitions on 12 March 2002 for the termination of the parental rights of C.J.P. (respondent) with respect to the children. Subsequent to these petitions, in an order filed 21 May 2002, the trial court noted that the petitions to terminate respondent's parental rights had been filed and ordered that legal and physical custody of the children remain with petitioner. In an order dated 25 July 2002, the trial court again ordered that legal custody of the children remain with petitioner. Respondent filed answers to the petitions for termination of parental rights on 29 August 2002. In an order filed 5 September 2002, the trial court again ordered that legal custody of the children remain with petitioner. A hearing was held on 26 November 2002 and the trial court terminated respondent's parental rights to the children. Respondent appeals.
The evidence presented to the trial court tended to show that J.W.J. was born on 30 July 1986, T.L.J. was born on 14 February 1989, and D.M.J. was born on 9 September 1992 to respondent and E.J. D.M.J. was placed with his paternal grandparents at birth and has never lived with respondent. Respondent testified that she took J.W.J. and T.L.J. to California when they were about ages four and two, respectively. Respondent further testified that she, J.W.J., and T.L.J. returned to North Carolina after being in California for about eight years. Respondent also testified that she subsequently returned to California without the children because she was told by the Sheriff's Department and a social worker that she could not take the children with her.
Respondent first argues that her constitutional and due process rights were violated by lack of notice and lack of jurisdiction over her in this case. Respondent asserts that prior to the November 2002 hearing for the termination of her parental rights, she had last been in North Carolina in 1997. Prior to coming to North Carolina in 1997, respondent testified that she lived in California with her two older children. As stated above, respondent testified that at some point around 1997, she came to North Carolina but that she returned to California because she was told by the Sheriff's Department and a social worker that she had to leave North Carolina. Respondent testified she was told she could not take her children with her to California. She testified that although she wanted to take the children with her, she returned to California alone.
Respondent stresses in her argument that she suffers from schizophrenia and that petitioner made no effort to contact her and made no effort to assess if she was capable of caring for her children. Respondent further asserts that petitioner failed to provide her with notice of any of the review hearings prior to the termination hearing. Upon receipt of the petition to terminate her parental rights, respondent wrote to the Richmond County Clerk of Court in an attempt to explain her situation. She provided her contact information and expressed her desire to see her children again and to not "lose all contact" with them.
Respondent cites several cases where this Court has found contacts to be insufficient to support the exercise of personal jurisdiction in a termination of parental rights case. See In re Finnican, 104 N.C.App. 157, 408 S.E.2d 742 (1991), disc. review denied and cert. denied, 330 N.C. 612, 413 S.E.2d 800, overruled in part on other grounds by Bryson v. Sullivan, 330 N.C. 644, 663, 412 S.E.2d 327, 337 (1992); In re Trueman, 99 N.C.App. 579, 393 S.E.2d 569 (1990). While respondent is correct in her assertion that minimum contacts must exist in order for a trial court to exercise jurisdiction, respondent's argument fails nonetheless.
Under Rule 12(h)(1) of the North Carolina Rules of Civil Procedure, the "defense of lack of jurisdiction over the person ... is waived ... if it is neither made by motion under this *103 rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course." N.C. Gen.Stat. § 1A-1, Rule 12(h)(1) (2003). In this case, respondent mailed a handwritten response to the petitions to terminate her parental rights to the Richmond County Clerk of Court. Further, she filed formal answers to the petitions on 29 August 2002. In her response and answers, respondent failed to raise the defense that the trial court lacked personal jurisdiction over her. Accordingly, respondent has waived this defense pursuant to Rule 12(h)(1). See Jackson Co. v. Swayney, 75 N.C.App. 629, 630, 331 S.E.2d 145, 146 (1985) ("Defendant waived his right to contest lack of personal jurisdiction when he filed his answer without raising this defense."), aff'd in part and rev'd in part on other grounds, 319 N.C. 52, 352 S.E.2d 413, cert. denied, 484 U.S. 826, 108 S.Ct. 93, 98 L.Ed.2d 54 (1987). See also Stern v. Stern, 89 N.C.App. 689, 693, 367 S.E.2d 7, 9 (1988) (holding that because the defendant filed his answer without contesting personal jurisdiction, he waived his right to challenge the trial court's exercise of personal jurisdiction over him); Shores v. Shores, 91 N.C.App. 435, 437, 371 S.E.2d 747, 749 (1988) (holding that the defendant waived his right to raise lack of personal jurisdiction as a defense "because he failed to raise it in his answer or motions but presents it for the first time on appeal"). Accordingly, we find respondent's first argument to be without merit.
Respondent next argues that the trial court erred in determining that the best interests of the children would be served by terminating her parental rights. Respondent asserts that the trial court erred in finding that termination was in the best interests of the children without making any findings or conclusions of law that petitioner made any diligent efforts to work with respondent or to reunite the family before recommending termination. For the reasons stated below, we find this argument unpersuasive.
"There is a two-step process in a termination of parental rights proceeding." In re Blackburn, 142 N.C.App. 607, 610, 543 S.E.2d 906, 908 (2001). "At the adjudicatory stage, the petitioner has the burden of establishing by clear and convincing evidence that at least one of the statutory grounds listed in N.C. Gen.Stat. § 7B-1111 exists." In re Faircloth, 153 N.C.App. 565, 575, 571 S.E.2d 65, 72 (2002). If a ground for termination is established, the trial court must then hold a dispositional hearing to consider the best interests of the child. Id."Unless the trial court determines that the best interests of the child require otherwise, the termination order shall be issued." Id.
In the case before our Court, respondent admits that the trial court found grounds for termination under N.C. Gen.Stat. § 7B-1111 (2003). However, respondent disputes the trial court's decision that it was in the best interests of the children to terminate her parental rights. Respondent relies on In re Harris, 87 N.C.App. 179, 360 S.E.2d 485 (1987) for her argument concerning the trial court's failure to make findings or conclusions that petitioner made diligent efforts to work with respondent or to reunite the family. We note that "G.S. 7A-289.32(3) [1995], the applicable termination statute when Harris was decided, included a requirement that DSS undertake `diligent efforts' to `encourage the parent to strengthen the parental relationship to the child or to make and follow through with constructive planning for the future of the child.'" In re Frasher, 147 N.C.App. 513, 516-17, 555 S.E.2d 379, 382 (2001) (quoting N.C. Gen.Stat. § 7A-289.32(3)). However, this statute was replaced by N.C. Gen.Stat. § 7B-1111(a)(2), effective 1 July 1999, which "deleted the `diligent efforts' requirement, indicating an intent by the legislature to eliminate the requirement that DSS provide services to a parent before a termination of parental rights can occur." Frasher, 147 N.C.App. at 517, 555 S.E.2d at 382. See also In re Pierce, 146 N.C.App. 641, 643-44, 554 S.E.2d 25, 27 (2001) (rejecting the respondent's argument that DSS was required "to prove that it made diligent efforts to encourage respondent to strengthen her parental relationship [.]" Our Court rejected this argument because it was based on the statutory provision, N.C. Gen.Stat. § 7A-289.32(3), which was no longer applicable.), aff'd, 356 N.C. 68, 565 S.E.2d 81 (2002). Similarly, we overrule respondent's argument based on the holding in Frasher that "a determination that DSS made diligent efforts to provide services to a parent is no longer a condition precedent to terminating parental rights." *104 Frasher, 147 N.C.App. at 517, 555 S.E.2d at 382.
Affirmed.
Judges McCULLOUGH and ELMORE, concur.